Argued September 22, decided October 7, 1913.

## BOLSTER *v.* LAMBERT.

### (135 Pac. 325.)

**Quieting Title—Actions—Evidence—Weight.**

1. In a suit to cancel mortgages upon land which plaintiff claimed descended to her from her father, the execution of the mortgages by her grandfather (who had the same name as her father), subsequent to the latter's death, is of light weight in determining the ownership of property.

**Names—Presumptions—Disputable Presumptions.**

2. When a father and son have exactly the same name and a deed is made, the grantee bearing the common name with nothing to indicate which one is intended, there is a disputable presumption that the father was intended, but it may be easily overcome by showing which one bought and paid for the property and to which one the deed was delivered.

**Quieting Title—Actions—Evidence—Sufficiency.**

3. In a suit to cancel mortgages to quiet plaintiff's title to land which she claimed as heir of her father, evidence *held* to support a finding that the mortgages were void and were a cloud on plaintiff's title.

From Multnomah: ROBERT G. MORROW, Judge.

Department 1. Statement by MR. JUSTICE RAMSEY.

This is a suit in equity by Mary Bolster and Clair Bolster for the removal of a cloud and for the cancellation of two mortgages on lots 15 and 16 in block 14, in Willamette, City of Portland, Multnomah County, Oregon, and for a decree declaring the plaintiffs to be the owners in fee of said real premises, and barring

all rights of the defendauts therein, and for general relief. The court below rendered a decree in favor of the plaintiffs. The defendants, A. W. Lambert, agent, and the Gauld Company, appeal. Mary J. Beers and the Arleta Plumbing & Heating Company did not file any answer nor did they appeal. The facts appear in the opinion of the court.        AFFIRMED.

For appellant, A. W. Lambert, Agent, there was a brief, with oral arguments by *Beach, Simon & Nelson.*

For appellant, the Gauld Company, there was brief, with oral arguments by *Flegel & Reynolds.*

For respondent there was a brief and an oral argument by *Mr. John C. Shillock.*

MR. JUSTICE RAMSEY delivered the opinion of the court.

This is a suit in equity to remove a cloud from the plaintiffs' title to lots 15 and 16 in block 14, in Willamette, as described on the recorded map of said Willamette on file and of record in the office of the recorder of conveyances of Multnomah County, Oregon, and to obtain a decree canceling two mortgages thereon, and declaring the plaintiffs to be the owners in fee of said real premises, etc. The court below rendered a decree for the plaintiffs.

The questions involved are chiefly questions of fact, and the evidence is conflicting. It is not practicable to set forth the evidence *in extenso* in this opinion.

The plaintiff Mary Bolster claims to be the owner in fee of said premises, and she claims through A. J. Beers, Jr., and deeds of conveyance from the heirs of said Beers, Jr., and also as one of his heirs. If her father owned said premises, the plaintiff is entitled to the relief for which she prays. On the other hand,

if her father did not own said premises, she is not entitled to any relief.

The name of the father of the plaintiffs was A. J. Beers, and her grandfather's name also was A. J. Beers. The defendants A. W. Lambert, agent, and the Gauld Company hold mortgages on said premises and claim through A. J. Beers, Sr., and not through A. J. Beers, Jr.

On June 23, 1903, John T. Sullivan and wife conveyed the premises in dispute to A. J. Beers, without adding either senior or junior to the name of the grantee.

On September 9, 1908, A. J. Beers, Sr., and his wife, Mary J. Beers, executed to the defendant A. W. Lambert, agent, a mortgage on said premises to secure the payment of $1,000. This mortgage was recorded in the mortgage records of Multnomah County on September 10, 1908, on page 367 of volume 325 thereof. A. J. Beers, Jr., died intestate on the 26th day of September, 1907, at the age of 47 years.

On the 4th day of June, 1908, A. J. Beers, Sr., made a deed attempting to convey said premises to his wife, Mary J. Beers. This deed was recorded June 9, 1908, in the proper records of deeds. A. J. Beers, Sr., died not long after making said deed.

On July 20, 1909, Mary J. Beers, widow of A. J. Beers, Sr., executed to the defendant the Gauld Company a mortgage on said premises to secure a promissory note for $1,888.99, upon which her deceased husband was a guarantor. This mortgage was recorded on page 53 of Book 356 of the records of mortgages of Multnomah County on July 23, 1909.

On September 21, 1905, A. J. Beers, Sr., mortgaged said premises to H. A. Skipstein to secure a loan of $400. This mortgage was made in the lifetime of A. J. Beers, Jr. It has been satisfied.

The mortgage to A. W. Lambert, agent, was executed by A. J. Beers, Sr., after the death of A. J. Beers, Jr., and the mortgage made by Mary J. Beers to the Gauld Company was executed after his death by Mary J. Beers, and the deed made to her by A. J. Beers, Sr., was executed after the death of A. J. Beers, Jr.

The crucial question in this case is: Was the deed of conveyance which was made by John T. Sullivan and wife to A. J. Beers made to A. J. Beers, Jr., or to A. J. Beers, Sr.? A. J. Beers, Sr., was the father of A. J. Beers, Jr. The latter was past 40 years of age and had a family of children. The father did not usually add senior to his name, nor did the son usually add junior to his name. The name of each was "A. J. Beers," and they resided as one family in the same house on the premises in question.

The following facts are proved to a moral certainty, and they are not disputed by any evidence:

(1) That A. J. Beers, Jr., bought the property in question of Mr. Sullivan and paid for it, and that A. J. Beers, Sr., had nothing to do with the buying of it, and that he did not pay any part of the purchase price.

(2) That the deed for the property was made by Sullivan and wife and delivered to A. J. Beers, Jr., and that the grantee therein was A. J. Beers, without the addition of either senior or junior.

(3) That the dwelling-house was built on the property and paid for by A. J. Beers, Jr., and the evidence fails to show that the father contributed anything to the expense of building the house.

(4) That the common reputation in the community was that this property belonged to A. J. Beers, Jr. On the other hand, there was evidence that the father obtained the Sullivan deed from the recorder's office

after it had been recorded; that before the death of the son he borrowed $400, and, to secure the payment of the debt created thereby, he, without his wife's joining therein, executed a mortgage on the property in question, and after the death of A. J. Beers, Jr., he executed a mortgage on the property to the defendant, A. W. Lambert, agent, and later attempted to convey this property to his wife.

He was administrator of his son's estate, and in making the inventory of the estate he omitted the property in question therefrom, but he told a neighbor, only about six weeks after his son's death, that this property belonged to his son's estate. He told others that the property belonged to his son. It appears that the son always claimed that he owned this property. There is no direct evidence tending to prove that the son knew that his father had executed the $400 mortgage on this land mentioned *supra.*

Fred. L. Beers, a nephew of his, testified (Evidence, p. 180) that A. J. Beers, Jr., told him that his father was going to raise money on the place for him, but on page 181 of the evidence this witness says that his uncle Andrew, Jr., told him that *he* was going to borrow money on this property. This is no evidence that the son ever recognized the right of his father to treat this property as his own or in any manner to exercise acts of ownership over it.

1. As stated, *supra,* the two mortgages made to the defendants and the deed to Mary J. Beers were all executed *after* the death of A. J. Beers, Jr., and their execution is of little weight in determining whether this property belonged to the father or to the son.

Mary J. Beers, the widow of A. J. Beers, Sr., and stepmother of A. J. Beers, Jr., testified that this property belonged to the son and not to the father, although she executed two mortgages on it. Both of them were executed *after* the death of A. J. Beers, Jr.

Nellie Rowley, a daughter of A. J. Beers, Sr., and sister of his son, testified by deposition taken on behalf of the defendant Lambert, agent. She was in poor health and seemed unwilling to testify. Her testimony is very unsatisfactory, because it is hardly consistent. She says that, when her brother was about to obtain a deed for this property, he went to her and asked her to permit him to have the deed made to her, and that she declined to accede to his request, and she says that he told her afterward that the property had been deeded to his father. This witness admitted, on cross-examination, that she had had an appointment to go to the office of the attorney for the plaintiff to see about being a witness for the plaintiff, who is her niece, and that she had agreed to be a witness for the plaintiff. Counsel asked her, for the purpose of laying the foundation for impeachment, concerning conversations which she had only a few days before the deposition was taken with G. W. Bolster, concerning what she told him about the ownership of the property in dispute, but her answers were very unsatisfactory. She was asked whether she did or did not tell Mr. Bolster, at the time and place referred to, that the property did not belong to her father, and that he never had any interest in it, and she answered, ''I don't know whether I did or not.'' Asked (on page 215 of the evidence) whether she told Clair Bolster and G. W. Bolster that she would take the stand and swear that her brother Andrew J. Beers was the owner of the property, and that her father had no interest in it, she answered, ''Oh, I don't know what I did say''; and in answer to the next question she said, ''You have got it all jumbled up so that I don't know anything about it any more.'' Her evidence was so unsatisfactory to the attorney for the defendant the Gauld Company that, as shown on page 219 of the evi-

dence, he moved the court to strike out her evidence, so far as his client was concerned, and later renewed said motion and stated that he preferred to rely on other evidence. The court denied the motion. We refer to this incident to show that the evidence of Mrs. Rowley was very unsatisfactory. It is not practicable to set forth much of her evidence. She was squarely contradicted by Mrs. Alberta E. Leonard as to a conversation which Mrs. Rowley had with Mrs. Leonard. The latter testified that Mrs. Rowley told her that her brother often told her that the property belonged to him, and that it was not the property of his father. Owing to Mrs. Rowley's condition and the nature of her evidence, we are not able to give much weight to what she said.

2. When a father and a son have exactly the same name, and a deed is made, and the grantee bears the common name, with nothing to indicate which one was intended to be the grantee, there is a disputable presumption that the father was intended: *Chapman* v. *Tyson*, 39 Wash. 523 (81 Pac. 1066). But such presumption is easily overcome by showing which one bought and paid for the property and to which one the deed of conveyance was delivered. The court below found that neither A. J. Beers, Sr., nor his wife, Mary J. Beers, ever owned the property in dispute or had any right, title or interest therein, and that the plaintiff Mary Bolster is the owner in fee of said premises and in the possession thereof.

3. We find from the preponderance of the evidence that the plaintiff Mary Bolster is the owner in fee of the real premises in dispute and in possession thereof, and that the mortgages held by A. W. Lambert, agent, and the Gauld Company, defendants, and described in the complaint and the answers, are null and void and a cloud on plaintiffs' title, and that they should be can-

celed, and that they were canceled by the decree of the court below.

The decree of the court below is affirmed.

Affirmed.

Mr. Chief Justice McBride, Mr. Justice Moore and Mr. Justice Burnett concur.